IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PARDINI,<br>            Plaintiff, | )<br>)<br>) |
| vs. | ) Civil Action No. 12-1254<br>)<br>) Magistrate Judge Maureen P. Kelly |
| ALLEGHENY COUNTY; RAMON C.<br>RUSTIN; OFFICER DAGBROWSKI;<br>OFFICER KIRAKOWSKI; JOHN DOE,<br>            Defendants. | )<br>)<br>) Re: ECF No. 8<br>) |

## **OPINION**

**KELLY, Magistrate Judge,**

Plaintiff John Pardini ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983 asserting the violation of his Fourteenth Amendment rights in the course of his admission into the Allegheny County Jail. Plaintiff's claims arise out of the alleged unlawful use of excessive force, resulting in a fractured elbow, and the subsequent denial of medical treatment for the injury.

Defendants have filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure contending that Plaintiff has failed to allege sufficient facts against any Defendant to state a cognizable cause of action for deliberate indifference with regard to the provision of medical treatment. Defendants also seek dismissal of claims asserted against Ramon C. Rustin, who served as Warden of Allegheny County Jail at the time Plaintiff's claims arose, contending that the Complaint fails to allege sufficient facts to

1

establish Defendant Rustin's personal involvement in the alleged violation of Plaintiff's rights so as to sustain a claim against him.  Finally, Defendants seek the dismissal of claims asserted against Allegheny County on the grounds that the Complaint fails to plead the factual predicate necessary for a claim of municipal liability for his injuries.  Defendants do not seek dismissal of the excessive force claims alleged against Defendants Dagbrowski and Kirakowski.

For the following reasons, Defendants' Motion to Dismiss [ECF No. 8] is granted in part and denied in part.

I.  **FACTUAL BACKGROUND**

Plaintiff alleges that during the course of his admission to the Allegheny County Jail on September 4, 2010, Defendants Dagbrowski and Kirakowski slammed his head into a door jam and wrenched his arm behind his back until it "popped."  The Complaint alleges that Plaintiff was then left in a cell "for hours" during which time his arm swelled, cutting off circulation to his hand.  Although he repeatedly requested medical assistance for his fractured arm, it was not until "several hours" had passed before the arrival of an individual who identified himself as a medical professional.  Plaintiff alleges that this "John Doe" defendant looked at Plaintiff's arm through a cell door and proclaimed that "it looked fine."  Plaintiff was released from the Allegheny County Jail the following morning and immediately went to a hospital, where he was admitted because of the degree of swelling.  It was determined that Plaintiff had sustained a fracture of his elbow.

II.  **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek the dismissal of a complaint or

portion of a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In order to avoid dismissal under Rule 12(b)(6), a pleading party's complaint must provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge [his or her] claims across the line from conceivable to plausible.'" Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008) (quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544, 556, 570(2007)). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Co. v. Twombly, 550 U.S. at 555.

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss." Id. at 678. Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at 679.

In Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit provided a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' The plaintiff must show 'the allegations of his or her complaints are plausible. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of

3

misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.' [This] 'plausibility' determination will be 'a context – specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679. If a court determines that a complaint is vulnerable to 12(b)(6) dismissal, the court must permit a curative amendment, irrespective of whether Plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. Phillips, 515 F.3d at 236.

## III. DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir. 1994). See also Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

In this case, Plaintiff alleges that his Fourteenth Amendment rights to protection from excessive force and deliberate indifference to his need for medical treatment were violated by each of the Defendants. Defendants contend, however, that the allegations set forth in the Complaint do not sufficiently state a claim for the violation of Plaintiff's rights with regard to the provision of medical care for his injuries. Accordingly, Defendants seek the dismissal of

4

Plaintiff's claim arising out of the alleged denial of medical care pursuant to Rule 12(b)(6). In addition, Defendants Allegheny County and Warden Rustin seek the dismissal of all claims against them because the Complaint fails to allege sufficient facts regarding their personal involvement in the violation of Plaintiff's constitutional rights to plausibly give rise to an entitlement to relief.

### A. Medical Treatment Claims

Plaintiff alleges that Defendants denied Plaintiff medical treatment for his fractured arm, leaving him to suffer in pain until he was released. Because of his status as a pre-trial detainee, his denial of medical care claim will be analyzed under the Fourteenth Amendment. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243–45 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor ("Hubbard I"), 399 F.3d 150, 158 (3d Cir. 2005); King v. County of Gloucester, 302 F. App'x 92, 96 (3d Cir. 2008). See also Montgomery v. Ray, 145 F. App'x 738, 740 (3d Cir. 2005) ("the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, [441 U.S. 520, 536-37 (1979)]; i.e., whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of guilt ....") (citing Hubbard I, 399 F.3d at 158).

The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishment standard, contains both an objective component and a subjective component. Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). Accordingly, in order to establish a claim, a "plaintiff must make an 'objective' showing that the deprivation [of care] was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious.

Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), citing Wilson v. Seiter, 501 U.S. 294, 298 (1991).

With regard to the allegations in Plaintiff's Complaint, deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S 97, 104 (1976). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Defendants assert that medical treatment was provided in the hours after Plaintiff's injury but that the treatment may have been merely negligent and, therefore, Plaintiff therefore does not state a claim upon which relief may be granted. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004)(neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir, 1999) (quoting Estelle v. Gamble, 429 U.S. at 105 (allegations of negligence and medical malpractice are not sufficient to establish a Constitutional violation as the "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' . . .")); and see, Taylor v. Visinsky, 422 F. App'x 76, 78 (3d Cir. ), *cert. denied*, ___ U.S. ___, 132 S. Ct. 406

6

(2011)(allegations that the inmate was provided with medical care, but the care was "inadequate," fails to state a cognizable claim).

At this early stage of the proceeding, Plaintiff's allegations of repeated requests for medical treatment coupled with obvious but ignored excessive swelling of his arm are sufficient to meet the minimum requirements of stating an Eighth Amendment deliberate indifference claim. Deliberate indifference does not require a showing of complete failure to provide care, rather "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." Lanzaro, 834 F.2d at 346 (3d Cir. 1987) (citing Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir.1976)), cited with approval in Estelle, 429 U.S. at 105). Given the allegations set forth in the Complaint, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim regarding the denial of medical treatment against Defendants Dagbrowski, Kirakowski and John Doe is denied.

**B. Claims Against Supervisory Defendants**

Defendants also seek the dismissal of claims against Allegheny County and Ramon C. Rustin, individually and in his capacity as Warden of the Allegheny County Jail. Defendants contend that the Complaint does not allege sufficient personal involvement of each of these defendants to support a viable Section 1983 claim arising out of either the use of excessive force against inmates or the failure to provide medical treatment.

With regard to Defendant Allegheny County, Section 1983 claims against a municipal entity are significantly different than those against individual officials. The United States Supreme Court has held that municipalities and other local government units qualify as "persons" subject to liability under Section 1983. Monell v. Dept. of Soc. Servs., 436 U.S. 658,

690 (1978). However, a municipality cannot incur Section 1983 liability based on a theory of respondeat superior. Id. at 691. Rather, Section 1983 imposes liability "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." See Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011)(quoting, Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, (1978). "[U]nder Section 1983, local governments are responsible only for 'their own illegal acts.'" Id., quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986).

Thus, plaintiffs who seek to impose liability on local governments under Section 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S. at 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. Id.; Pembaur, supra, at 480–481. These are "action[s] for which the municipality is actually responsible." Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011) (quoting Pembaur, supra, at 479–80). A plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

The United States Court of Appeals for the Third Circuit has refined these definitions, explaining that policy or custom may be established: (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action, issues an official proclamation, policy or edict," or (2) through a "course of conduct ... when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)

8

(citations and quotations omitted); see also Anderson v. Goga, C.A. No. 11 – 528, 2011 WL 4737569 (W.D. Pa. Oct. 5, 2011).

In addition, a plaintiff must show that the municipality has acted with "deliberate indifference" to the plaintiff's constitutional rights. Simmons v. City of Philadelphia, 947 F.2d 1047, 1059 (3d Cir.1991). Mere negligence is not enough. Finally, the plaintiff must show that the municipality was the "moving force" behind the injury alleged. Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). As the United States Supreme Court recently stated:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." ... Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."

Connick v. Thompson, ___ U.S. ___, 131 S.Ct. 1350, 1359–60, (2011) (parallel and additional citations omitted).

To determine the sufficiency of Plaintiff's allegations against Allegheny County with regard to the adoption of a practice or custom of deliberate indifference causing his injuries, the Court must look to the analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss. The test, set forth in Santiago v. Warminster Twp., 629 F.3d 121, 129–30 (3d Cir. 2010), requires that the district court initially "take note of the elements a plaintiff must plead to state a claim." Id. at 130. Next, the court should identify allegations that "are no more than conclusions" and thus, "not entitled

9

to the assumption of truth." Id. Lastly, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Here, Plaintiff's Complaint formulaically alleges that Allegheny County was on notice of past complaints regarding jail personnel using excessive force against inmates and failing to provide inmates and detainees with adequate medical care. The Complaint further alleges in conclusory terms that the use of excessive force and failure to provide medical treatment constituted a pattern or practice which the County failed to rectify, and so it acquiesced in the unconstitutional conduct of its employees, causing Plaintiff's injuries. [ECF No. 1, ¶¶ 24-26, 29-30]. The Complaint, however, does not allege the factual basis of these broad-sweeping allegations. For example, there are no allegations of other instances of misconduct involving Defendants Dagbrowski, Kirakowsi or John Doe sufficient to put Allegheny County on notice of the potential for harm; nor are there allegations of routine abuse in the course of processing inmates or responding to calls for medical assistance so as to give rise to a plausible inference that the County acted with deliberate indifference by failing to protect Plaintiff. While discovery may enable the Plaintiff "to uncover evidence that may support the allegations set forth in [his] complaint, a court is not required to assume that a plaintiff can prove facts not alleged." Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005) (affirming dismissal of complaint where no basic facts are alleged to support conclusory allegations).

In the context of the allegations of Plaintiff's Complaint, the allegations against Allegheny County simply do not set forth a plausible claim of deliberate indifference to a custom or practice of unconstitutional conduct giving rise to municipal liability. See also Neil v. Allegheny County, No. 12-0348, 2012 WL 3779182 (W.D. Pa. Aug. 31, 2012); Kipp v.

10

Allegheny County, No. 11-1553, 2012 WL 1463309 (W.D. Pa. April 27, 2012). Accordingly, Defendant's Motion to Dismiss Allegheny County as a defendant in this action is granted without prejudice to the filing of an Amended Complaint alleging facts in support of Plaintiff's claims.

Similarly, Defendants argue that Defendant Warden Rustin should be dismissed because Plaintiff has failed to allege his personal involvement in the constitutional violations suffered at the Allegheny County Jail.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. at 677 ("In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 F. A'ppx 297, 300 (3d Cir. 2009). See, also, Monell, supra, (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293–1295 (3d Cir.1997), *overruled in part on other grounds by* Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 60 (2006) *and by* Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 753–54 (1998) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Plaintiff sets forth very few factual allegations against Defendant Rustin in the Complaint. In particular, the Complaint lists Rustin as Warden of the Allegheny County Jail at

the time of the events complained of and alleges broadly that he was aware of a pattern of abuse and the unconstitutional denial of medical care and failed to prevent such customs or practices. However, these allegations, stripped of their formulaic recitation of the elements of liability, are devoid of facts plausibly showing Defendant Rustin's involvement in the violation of Plaintiff's rights. There are no allegations that Defendant Rustin personally participated or directed others to use excessive force against the Plaintiff or that he affirmatively adopted any particular policy to withhold medical treatment or delay it to cause pain such that he directly caused the violation of Plaintiff's rights. Plaintiff does not allege that Defendant Rustin had knowledge of Plaintiff's incarceration or his alleged injury so as to give rise to an inference that he was aware that Plaintiff was denied medical treatment after sustaining an injury. As with Allegheny County, Plaintiff has failed to enough factual matter to nudge his claims against Defendant Rustin "across the line from conceivable to plausible." Bell Atlantic Co. v. Twombly, at 570. See, also, Neil v. Allegheny County, No. 12-0348, 2012 WL 3779182 *6 (W.D. Pa. Aug. 31, 2012); Kipp v. Allegheny County, No. 11-1553, 2012 WL 1463309 * 5 (W.D. Pa. April 27, 2012). Accordingly, Plaintiff's claims against Defendant Rustin are dismissed without prejudice to the filing of an Amended Complaint alleging facts in support of Plaintiff's claims.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss [ECF No. 8] is denied as to Plaintiff's claims against Defendants Dagbrowksi, Kirakowski and John Doe with regard to the denial of medical treatment, and is granted with leave to amend as to all claims asserted against Defendants Allegheny County and Warden Rustin.

# ORDER

AND NOW, this 16th day of May, 2013, upon consideration of Defendants' Motion to Dismiss [ECF No. 8], and the briefs filed in support and opposition thereto, IT IS HEREBY ORDERED that the Motion to Dismiss is denied as to Plaintiff's claims against Defendants Dagbrowksi, Kirakowski and John Doe with regard to the denial of medical treatment, and is granted with leave to amend as to all claims asserted against Defendants Allegheny County and Ramon C. Rustin.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

BY THE COURT,

/s/ Maureen P. Kelly  
MAUREEN P. KELLY  
UNITED STATES MAGISTRATE JUDGE

cc:    All Counsel of Record via CM-ECF